UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

UPSTATE NEW YORK ENGINEERS HEALTH FUND, by Deborah Spaulding, as Administrator; UPSTATE NEW YORK ENGINEERS PENSION FUND, by Deborah Spaulding, as Administrator; UPSTATE NEW YORK ENGINEERS S.U.B. FUND, by Deborah Spaulding, as Administrator; UPSTATE NEW YORK ENGINEERS TRAINING FUND, by Theron Hogle and Eugene Hallock, as Trustees; LOCAL 106 TRAINING AND APPRENTICESHIP FUND, by Daniel J. McGraw and James Logan, as Trustees; I.U.O.E. LOCAL 158 TRAINING FUND, by Theron Hogle and James Logan, as Trustees; OPERATING ENGINEERS LOCAL 17 TRAINING FUND, by James Smolinski, as Administrative Manager; CENTRAL PENSION FUND OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS AND PARTICIPATING EMPLOYERS, by its BOARD OF TRUSTEES; INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL NO. 17, by Gary Swain, as Business Manager; UPSTATE NEW YORK OPERATING ENGINEERS LOCAL 158, by Michael Lyons, as Business Manager,

5:20-cv-00431 (BKS/ATB)

Plaintiffs,

v.

CAMBRIA CONTRACTING, INC., FRANCIS V. BARONE, JR., Individually and as an Officer of Cambria Contracting, Inc., and TRICIA L. BARONE, Individually and as an Officer of Cambria Contracting, Inc.,

Defendants.
_____

**Appearances:**

*For Plaintiffs:*
Jennifer A. Clark
Kenneth L. Wagner
Blitman & King LLP
Franklin Center - Suite 300
443 North Franklin Street
Syracuse, New York 13204

*For Defendants:*
R. Anthony Rupp, III
Aaron W. Knights
Jacob J. Honan
Marco Cercone
Rupp Pfalzgraf LLC
1600 Liberty Building
424 Main Street
Buffalo, New York 14202

Gerald Dandeneau
425 Broadhollow Rd. - Ste. 114
Melville, New York 11747

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

I.     **INTRODUCTION**

      The Upstate New York Engineers Health Fund, Pension Fund, S.U.B. Fund, Training Fund, Central Pension Fund, Local 106 Training Fund, Local 158 Training Fund, and Local 17 Training Fund—multi-employer employee benefit plans as defined by 29 U.S.C. §§ 1002(3), (37)—along with Deborah Spaulding, Theron Hogle, Eugene Hallock, Board of Trustees of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, Daniel J. McGraw, James Logan, James Smolinski in fiduciary capacities for the various funds and Gary Swain on behalf of Local Union No. 17 and Michael Lyons on behalf of Local Union No. 158 (all together, "Plaintiffs"), bring this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. and the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a). (Dkt. No. 56). Plaintiffs sued Cambria Contracting Inc. as well as Francis V. Barone, Jr. and Tricia L. Barone individually and as officers of Cambria. (*Id.*). Plaintiffs allege that Defendants failed to timely remit contributions, breached their fiduciary duties, violated various other ERISA provisions, and violated collective bargaining agreements. (*Id.*).

On July 25, 2024, Plaintiffs filed a motion for summary judgment, relying in part on a Stipulation of Facts and Liability signed by counsel for Plaintiff and former counsel for Defendants. (Dkt. No. 89-47). Presently before the Court is Defendants' motion seeking to withdraw from and set aside the Stipulation. (Dkt. No. 102). The motion is fully briefed, (Dkt. Nos. 102-11, 106-3, 108-9), and the Court held an evidentiary hearing on the motion on March 25, 2025. For the reasons that follow, Defendants' motion is denied.

## II.     BACKGROUND[1]

On April 14, 2020, Plaintiffs filed the instant lawsuit against Tricia L. Barone, Francis V. Barone, and Cambria Contracting, Inc. (Dkt. No. 1). In the summer of 2020, attorneys from the law firm of Rupp Pfalzgraf LLC noticed their appearance on behalf of the Defendants. (Dkt. Nos. 7, 10). Another law firm, Harter Secrest & Emery LLP ("HSE"), became involved in this case on behalf of the Defendants in 2024. On March 27, 2024, Erika N.D. Stanat of HSE noticed her appearance on behalf of the Defendants. (Dkt. No. 74). Thereafter, HSE served as lead counsel for Defendants and Rupp Pfalzgraf remained as co-counsel of record. (Dkt. No. 102-1, ¶ 4). HSE lawyer Michael-Anthony Jaoude noticed his appearance on behalf of the Defendants on April 17, 2024. (Dkt. No. 78).

On April 17, 2024, U.S. Magistrate Judge Andrew T. Baxter held a telephone conference wherein the Rupp Pfalzgraf attorneys, Aaron Knights and Jacob Honan, and Defendants' new counsel, Ms. Stanat, and Mr. Jaoude, appeared for the Defendants. (Dkt. No. 105, at 1). Magistrate Judge Baxter sought "to get a handle on what remains to be done" in discovery and to set "the most expeditious schedule" "to get that accomplished." (*Id.* at 3). In that conference,

---

[1] The facts are taken from the docket, generally, as well as the affidavits and exhibits submitted along with each party's moving papers.

3

Plaintiffs' counsel reported that they had "provided [Rupp Pfalzgraf] with a stipulation of facts so that [the parties] could narrow the issues in this case and narrow discovery, and [Rupp Pfalzgraf] rejected that stipulation on two occasions." (*Id.* at 9). According to Defendants' moving papers, the parties had been exchanging drafts of a stipulation of facts and liability since June 2023. (Dkt. No. 102-1, ¶ 6). Magistrate Judge Baxter directed Mr. Knights to "look carefully at the stipulations that [Plaintiffs' counsel] ha[d] proposed and think about ways . . . [to] narrow discovery by clarifying what's in dispute and what isn't." (Dkt. No. 105, at 17). During a discussion of scheduling, Mr. Knights stated that "new counsel engaging in the case" would "effectively take the role of lead counsel for [him]" and were "getting . . . up to speed." (*Id.* at 19–20). Magistrate Judge Baxter set final deadlines for discovery and dispositive motions, and indicated that they would not be extended. (*Id.* at 20; Dkt. No. 79).

On May 7, 2024, Mr. Knights of Rupp Pfalzgraf responded to Plaintiffs' most recent proposed stipulation, sharing a revised redlined version and asserting that "[w]e are willing to execute this stipulation subject to our clients' approval and subject to your agreement that signing the stipulation will obviate the need for depositions of Mr. Barone, Ms. Barone, Mr. Wendt, or any other Cambria representative." (Dkt. No. 106-1, at 8). On May 8, Plaintiffs' counsel responded that the proposed modifications were "unacceptable." (*Id.* at 24). On May 10, Mr. Jaoude of HSE emailed Plaintiffs' counsel asking to "touch base on the stipulations." (*Id.* at 26). From that point on, Mr. Jaoude and Plaintiffs' counsel communicated several times about the stipulation. (Dkt. Nos. 106-1, 106-2; s*ee also* Dkt. No. 108-2, ¶ 8 (declaration from Mr. Knights affirming that "after HSE was retained," "it was agreed that HSE would handle any depositions and take over communications with [Plaintiffs' counsel]")).

4

On May 21, 2024, Ms. Stanat and Plaintiffs' counsel executed a Stipulation: there are no other signatories on the Stipulation. (Dkt. No. 89-47). The Stipulation waives various defenses the Defendants had asserted during the course of the lawsuit. (*Id.*; Dkt. No. 102-1, ¶ 7).

In July 2024, Defendants obtained new counsel, Gerald Dandeneau.[2] On July 19, 2024, Defendants through Rupp Pfalzgraf and Mr. Dandeneau, sent Plaintiffs a letter objecting that the Stipulation was "made without the informed consent of Mr. Fran Barone, and without any discussions with Ms. Tricia Barone, another named Defendant, and without any consultation with Rupp Falzgraf [sic], lead counsel in this matter." (Dkt. No. 106-2, at 2). Mr. Dandeneau affirms that he never received a response from Plaintiffs' counsel, (Dkt. No. 108, ¶ 18), and instead, Plaintiffs moved for summary judgment on July 25th, relying partially on the Stipulation. (Dkt. No. 89).

In support of the instant motion, Defendants produced affidavits from Defendant Francis Barone, Defendant Tricia Barone, and David Wendt. (Dkt. Nos. 102-1, 102-4, 102-6). Defendant Francis Barone affirms that he "was never presented with a draft of the Stipulation by HSE for approval prior to when the Stipulation was executed" and that if he had been "provided with a copy of the Stipulation for review prior to its execution, [he] would not have consented to the Stipulation being signed." (Dkt. No. 102-1, ¶ 8). Likewise, Defendant Tricia Barone affirms that she "never consented to Ms. Stanat entering into the Stipulation on [her] behalf"; "never saw a draft of the Stipulation prior to when it was executed"; did not "know about the Stipulation until well after it was executed"; and "would not have consented to the Stipulation being signed" had she reviewed a copy of the Stipulation prior to execution. (Dkt. No. 102-4, ¶ 6). Mr. Wendt, who was acting as liaison and primary point-of-client-contact for the law firms, affirms that

---

[2] Gerald Dandeneau noticed his appearance on behalf of the Defendants on July 24, 2024. (Dkt. No. 88).

Defendants "did not agree to the Stipulation executed by Ms. Stanat"; were not "aware that Ms. Stanat was going to execute the Stipulation on their behalf"; "did not learn that Ms. Stanat executed the Stipulation until after she executed it"; and "were not informed of the legal consequences of signing the Stipulation." (Dkt. No. 102-6, ¶¶ 2, 10–11).

On July 25th, Ms. Stanat filed a motion for HSE to withdraw as counsel of record for Defendants in the matter. (Dkt. No. 91). Mr. Dandeneau subsequently filed an emergency motion on behalf of all Defendants for a temporary restraining order / order to show cause, seeking to withdraw from the Stipulation. (Dkt. No. 99).[3] Magistrate Judge Baxter held a conference on August 9, wherein he informed Defendants that their challenge to the stipulation would trigger "at-issue" waiver of any privilege with respect to the execution of the stipulation and Mr. Dandeneau confirmed that the Defendants were willing to proceed anyway. (Dkt. No. 113, at 18–19, 22). Magistrate Judge Baxter noted that HSE would likely be required to respond to Defendants' allegations that the stipulation was entered into without authorization, which would create a substantial conflict of interest between HSE and Defendants. (*Id.* at 22–23). Accordingly, Magistrate Judge Baxter granted HSE's motion to withdraw and set a briefing schedule on Defendants' motion. (*Id.* at 27–30). Following briefing, the Court scheduled an evidentiary hearing for March 25, 2025.

## III.    EVIDENTIARY HEARING

Mr. Barone, Ms. Barone, Mr. Wendt, Ms. Stanat, and Mr. Jaoude all testified at the evidentiary hearing, and the parties presented exhibits. After carefully considering the record, the credibility of the witnesses, and all of the submissions of the parties, the Court credits all of the

---

[3] Defendants initially moved to seal their motion, (Dkt. No. 100), but at the conference on August 9, 2024, withdrew the motion to seal; Defendants filed a duplicate motion, (Dkt. No. 102), after the Court directed Defendants to file an unredacted version on the docket, (Dkt. No. 113, at 27-28). The original motion, (Dkt. No. 99), was terminated as a duplicate, (Dkt. No. 114). The Court accordingly cites to Dkt. No. 102.

6

testimony of the HSE attorneys, Ms. Stanat and Mr. Jaude and, as set forth below, does not credit the testimony of Mr. Barone, Ms. Barone and Mr. Wendt which conflicts with the testimony of the HSE attorneys. The Court finds the following facts.

The action commenced in 2020 with Rupp Pfalzgraf representing Defendants. David Wendt, who was an employee of Defendant Cambria, acted as the primary point-of-client-contact for the law firms that represented the Defendants. In 2024, Defendants had questions about withdrawal liability and Mr. Wendt spoke to an auditor and consultant for Defendants, who recommended that Defendants retain Paul Holloway of HSE. At Mr. Barone's instruction, Mr. Wendt interviewed HSE and Mr. Holloway suggested that Defendants also bring in trial counsel from his firm. In March of 2024, Defendants decided to retain HSE, including Ms. Stanat and Mr. Jaoude as trial counsel; Mr. Wendt believes he signed the retainer agreement. At the time of the April 17, 2024 conference with Magistrate Judge Baxter, Ms. Stanat understood that HSE and Rupp Pfalzgraf were co-counsel, not lead counsel. Subsequently, in late April or early May of 2024, Mr. Wendt asked HSE to serve as lead counsel. Mr. Knights also sent an email to the HSE attorneys confirming they would be taking over as lead counsel.

The HSE attorneys met with Mr. Wendt in person and via Zoom and telephone calls regularly, and kept Mr. Wendt apprised about the status of negotiations with Plaintiffs' counsel with respect to the Stipulation. Ms. Stanat understood that Mr. Wendt was the primary point of contact and that she was to take direction from him. Mr. Wendt had instructed her as such, and Mr. Knights had indicated similarly that his direction during the prior four years of litigation had come from Mr. Wendt. This is consistent with the other evidence in the record that Mr. Wendt had authority to act on behalf of the Defendants. Mr. Barone testified that he works out-of-state for most of the week, and had designated Mr. Wendt as Cambria's corporal representative. Mr.

Barone acknowledged that Mr. Wendt appeared at conferences and meetings in connection with this litigation, including with Plaintiffs' counsel. Although Ms. Barone testified that she did not authorize Mr. Wendt to sign documents on her behalf as it related to her position in the litigation, she also testified that she did not directly deal with the attorneys and it was her understanding that Mr. Wendt was doing that on her behalf.

On May 15 or 16, 2024, Ms. Stanat and Mr. Jaoude went to Defendants' office to meet with Mr. Wendt and prepare him for his upcoming deposition. Although Mr. Wendt testified that he does not recall discussing the Stipulation during this meeting, the Court credits Ms. Stanat's testimony that they spoke about the Stipulation during that meeting. Ms. Stanat informed Mr. Wendt that there may be no need for depositions if Defendants waived all affirmative defenses and that the scope of the depositions may be limited if Defendants retained some affirmative defenses and waived others. Mr. Wendt informed the HSE attorneys that Mr. Barone was adamant about maintaining some affirmative defenses.

On May 20, 2024, Ms. Stanat and Mr. Jaoude returned to Defendants' office to meet with the individually-named defendants for the first time. They first met with Mr. Wendt, and then Mr. Wendt and Mr. Barone together. At some point Mr. Wendt left. The HSE attorneys then met with Ms. Barone, and at some point during that meeting, Mr. Wendt was present. The Court credits the HSE attorneys' testimony regarding this meeting. They explained that during the session with Mr. Barone, the HSE attorneys discussed the draft of the stipulation as it existed at that time, the affirmative defenses asserted in the answer, and what Mr. Barone was and was not willing to concede. The HSE attorneys went through each defense in the answer one-by-one and talked about the implications, pros, and cons of waiving versus maintaining each one. Mr. Barone represented that there were certain affirmative defenses he wanted to maintain, and the

HSE attorneys preserved those affirmative defenses in the Stipulation. The Court does not credit Mr. Barone's testimony that the document they reviewed at this meeting was the Defendants' answer.

In the session with Ms. Barone, the HSE attorneys again spoke about the Stipulation, although the conversation was not as substantive given Ms. Barone's lack of knowledge. They spoke about limiting the scope of Ms. Barone's personal liability to her dates of employment with Cambria. The Court does not credit Ms. Barone's testimony that they did not speak about a Stipulation. After meeting with Ms. Barone and before leaving Cambria's office, Ms. Stanat and Mr. Jaoude again spoke with Mr. Wendt, including in regards to the changes they were going to ask Plaintiffs' counsel to make to the Stipulation.

Ms. Stanat and Mr. Jaoude called Plaintiffs' counsel to request the changes discussed with the clients, and Plaintiffs' counsel agreed on the call to those edits. Later that afternoon, at 4:07 p.m., Plaintiffs' counsel emailed Ms. Stanat and Mr. Jaoude, saying "Following today's discussion, attached is another Stipulation of Facts and Liability in track format." (Pl. Ex. 2). At 4:30 p.m., Mr. Jaoude responded: "It looks like all our concerns are addressed, let us just run it by the client for final authority." (Pl. Ex. 3). Mr. Jaoude then tried to call Mr. Wendt to discuss the Stipulation, but Mr. Wendt did not answer. At 4:43 p.m., Mr. Jaoude sent Mr. Wendt an email stating:

> Just tried to give you a buzz, if you end up having a few minutes can you shoot me a quick call, please? I just wanted to discuss with you the latest version of the Stipulation we negotiated with [Plaintiffs' counsel]. It's generally along the lines that we discussed (you can see the changes here in track). We were able to negotiate a few additional stipulations in our favor . . . As far as the affirmative defenses[, it is t]he same thing we discussed previously. . . . Please let us know if you have any questions and if we have authority to execute. Ideally we would have authority prior to your deposition as the stipulation should limit what she needs to ask you (even if we

9

> can just verbally agree to it with her in person tomorrow). Happy to discuss at any point.

(Pl. Ex. 1). The draft version of the stipulation attached to the email, (Dkt. No. 102-8), is identical to the executed stipulation except the draft stipulation has a blank space in place of the April 30, 2020 date in paragraphs four through eleven and includes a signature line for Aaron W. Knights of Rupp Pfalzgraf in addition to the signature line for Ms. Stanat. (Dkt. No. 89-47). At 5:05 p.m., Mr. Jaoude sent a follow-up email stating, "Sorry, one additional note. We'll need to figure out Tricia's last date of employment. Can be done after we get authority to agree to the stip pending figuring out her final date." (Dkt. No. 108-8, at 2). Mr. Wendt testified that the attachment in Mr. Jaoude's email was the first written stipulation he received from the HSE attorneys, although he had received prior draft stipulations from Mr. Knights.

The parties agree that at 5:53 p.m., Mr. Wendt returned Mr. Jaoude's call, and the two spoke for approximately ninety seconds. The Court does not credit Mr. Wendt's testimony that he does not recall what was said in this phone call. The Court credits Mr. Jaoude's testimony that Mr. Wendt acknowledged receiving the emails and that HSE had authority to execute the Stipulation. Mr. Wendt mentioned that he did not have Ms. Barone's final employment date, but that he would obtain it. After the call with Mr. Wendt, Mr. Jaoude called Ms. Stanat to inform her that Mr. Wendt had provided authority, and she directed Mr. Jaoude to email Plaintiffs' counsel so they would not be prejudiced by doing unnecessary preparation for the upcoming depositions. At 5:57 p.m., Mr. Jaoude emailed Plaintiffs' counsel, stating:

> Just wanted to let you know we have authority from the client to sign the stipulation, but we are just working on getting Tricia's final date. Wanted to let you know in advance of Dave's deposition as I know the number of hours in dispute will impact the scope of your questions.

(Pl. Ex. 4).

On the morning of May 21, 2024, Ms. Stanat, Mr. Jaoude, and Mr. Wendt separately arrived at the offices of Plaintiffs' counsel for Mr. Wendt's deposition. Mr. Jaoude and Mr. Wendt discussed Ms. Barone's employment dates, and Mr. Wendt provided April 30, 2020 as her end date with the company. Mr. Jaoude provided the date to Plaintiffs' counsel and Plaintiffs' counsel informed him that the scope of Mr. Wendt's deposition would only be limited if the Stipulation was formally executed prior to the deposition. Mr. Jaoude relayed this to Ms. Stanat. Plaintiffs' counsel asked Ms. Stanat and Mr. Jaoude which of the attorneys representing Defendants were lead counsel, and the HSE attorneys informed Plaintiffs' counsel that HSE was lead counsel. Accordingly, an assistant for Plaintiffs' counsel updated the Stipulation to input the April 30, 2020 date and to remove the signature block for Mr. Knights, who was no longer lead counsel and not in attendance at the deposition. His signature block had been on the draft, because the final Stipulation evolved from a draft that Mr. Knights had worked on. When those edits to the Stipulation were made, Ms. Stanat left Mr. Jaoude and Mr. Wendt and went with Plaintiffs' counsel to execute it. The HSE attorneys did not provide Defendants or Rupp Pfalzgraf with a copy of the executed Stipulation nor did they file it with the Court.

On May 22, 2024, Ms. Stanat, Mr. Jaoude, and Mr. Barone separately arrived at the office of Plaintiffs' counsel for Mr. Barone's deposition. Mr. Barone briefly spoke with Ms. Stanat and Mr. Jaoude before the deposition. During his deposition, Plaintiffs' counsel asked how he prepared for the deposition, and he said he reviewed a document on Monday, May 20, 2024 while meeting with his attorneys. (Dkt. No. 106, ¶ 10; Dkt. No. 108-5, ¶ 9). Plaintiffs' counsel pressed further to identify the document, and Mr. Barone said it was "paperwork that part of the – what we agreed to and not agreed to or something like that." (Dkt. No. 106, ¶ 10; Dkt. No. 108-5, ¶ 10). Mr. Jaoude intervened and suggested Mr. Barone was referring to the

11

Stipulation. (Dkt. No. 106, ¶ 10). Plaintiffs' counsel asked if Mr. Barone reviewed any other documents in the case "[b]esides that stipulation of facts and liability," and Defendant answered no. (*Id.*). In his reply affidavit, (Dkt. No. 108-5, ¶¶ 7, 9), and in his testimony at the evidentiary hearing, Mr. Barone claims he was shown the Defendants' answer to the Plaintiffs' amended complaint, and that was the document he was referring to in his deposition. The Court does not credit that testimony. On cross-examination at the evidentiary hearing, Mr. Barone was asked to show what the Defendants "agreed to" in the answer, and he could only point to paragraph nineteen, admitting that "Francis V. Barone, Jr. is an officer and shareholder of Cambria." (Def. Ex. D, ¶ 19).

On May 24, 2024, Ms. Stanat, Mr. Jaoude, and Ms. Barone arrived separately at the offices of Plaintiffs' counsel for Ms. Barone's deposition. The three sat in a separate room for a few minutes before the deposition, and they exchanged pleasantries but did not talk about the Stipulation.

In June or July 2024, Defendants reached out to another attorney, Gerald Dandeneau, in regards to the litigation. Mr. Dandeneau spoke with the HSE attorneys and received relevant information and documents, including a copy of the executed Stipulation. In July 2024, Mr. Dandeneau called Mr. Wendt and asked why the Defendants had agreed to the Stipulation. Mr. Wendt said he was not sure what Mr. Dandeneau was referring to, and asked Mr. Dandeneau's office to send a copy. Mr. Wendt testified that the HSE attorneys had advised him to waive certain affirmative defenses because they would not be meritorious, but that Mr. Dandeneau informed him that those affirmative defenses could have potentially been successful. Mr. Wendt testified that he shared the executed Stipulation with Mr. Barone, meaning Mr. Barone did not

12

see the executed Stipulation until July 2024. Ms. Barone testified that she saw the Stipulation for the first time in August 2024.

Having fully credited the testimony of Ms. Stanat and Mr. Jaoude, the Court finds that Mr. Wendt gave Mr. Jaoude authority to execute the Stipulation on behalf of the Defendants.

### IV.     APPLICABLE LAW

"Under federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court." *PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984) (citation omitted). "Having agreed on a set of facts, the parties [who adopted the stipulation], and this Court, must be bound by them; we are not free to pick and choose at will." *Id.* (quoting *Stanley Works v. FTC*, 469 F.2d 498, 506 (2d Cir. 1972), *cert. denied* 412 U.S. 928 (1973)). A court "should not disturb a valid stipulation absent a showing of good cause such as fraud, collusion, mistake or duress, or unless the agreement is unconscionable or contrary to public policy, or unless it suggests an ambiguity indicating that the words did not fully and accurately represent the parties' agreement." *Katel Ltd. Liab. Co. v. AT&T Corp.*, 607 F.3d 60, 66 (2d Cir. 2010) (internal quotation marks and alteration marks omitted); *see also Hallock v. State*, 64 N.Y.2d 224, 230 (1984) ("Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation."). In the context of settlement agreements, courts presume that an attorney-of-record who entered the agreement had authority to do so, and the party "challenging [the] attorney's authority . . . bears the burden of proving by affirmative evidence that the attorney lacked authority." *Pereira v. Sonia Holdings*, 91 F.3d 326, 329 (2d Cir. 1996).

### V.     DISCUSSION

Defendants argue that the Stipulation must be set aside because it (1) was executed without Defendants' informed consent and (2) causes substantial prejudice to Defendants. (Dkt.

13

No. 102-11, at 4). Plaintiffs respond that Attorney Stanat had actual and apparent authority to execute the Stipulation, and that Defendants are bound by the Stipulation. (Dkt. No. 106-3, at 8, 13).

        A.        **Authority to Enter the Stipulation**

Plaintiffs rely heavily on a Southern District of New York decision that found a stipulation to be enforceable under similar circumstances. (Dkt. No. 106-3, at 10–11 (citing *Mason Tenders Dist. Council Welfare Fund v. LJC Dismantling Corp.*, 400 F. Supp. 3d 7 (S.D.N.Y. 2019))). Like this case, *Mason Tenders* was an ERISA case and the parties entered into a stipulation as to the findings of three audits. 400 F. Supp. 3d at 12. The *Mason Tenders* plaintiffs relied on the stipulation in their motion for summary judgment, and in a cross-motion for partial summary judgment, the defendant requested that the court vacate the stipulation on the grounds that it was entered into without defendant's consent and was unconscionable. *Id.* at 14–15. In support, the *Mason Tenders* defendant offered only a "conclusory and self-serving affidavit" from the defendant's vice president which stated, "without elaboration, that [he] was not aware that [prior counsel] had signed the [s]tipulation." *Id.* at 15. The court noted that the affiant did "not state that he was unaware of the [s]tipulation's existence, or that others at [defendant corporation] did not direct, know of, and/or acquiesce to [prior counsel] signing the [s]tipulation." *Id.* at 15 n.11. The court concluded that even if the Stipulation was entered into without the defendant's "express consent" and in excess of the attorney's actual authority, the attorney acted with apparent authority and the Stipulation was still enforceable. *Id.* at 16. The court noted that it was the defendant who had to "bear the responsibility for its former attorney's conduct," not the plaintiffs. *Id.*

Here, the Court finds that Mr. Wendt had actual authority to bind the Defendants and gave the HSE attorneys actual authority to execute the Stipulation. Mr. and Ms. Barone testified

14

that Mr. Wendt was liaising with the attorneys on their behalf, and the record evidence supports his role as the liaison. *See Telenor Mobile Communs. v. Storm LLC*, 524 F. Supp. 2d 332, 353 (S.D.N.Y. 2007) (explaining that an agent can bind the principal when acting with actual authority, as created and inferred by words or conduct from the principal). The Court fully credits Mr. Jaoude's testimony that Mr. Wendt gave him actual authority to execute the Stipulation during the May 20 phone call.

At the evidentiary hearing, the Defendants seemed to suggest that Mr. Wendt may not have had actual authority to bind them. The Court finds, however, that even if that were so, Mr. Wendt certainly had apparent authority to bind the Defendants. Apparent authority is created "when a principal places an agent in a position where it appears that the agent has certain powers which he may or may not possess." *Id.* at 354 (quoting *Masuda v. Kawasaki Dockyard Co.*, 328 F.2d 662, 665 (2d Cir. 1964)). "Where a third party 'holds the reasonable belief that the agent was acting within the scope of his authority and changes his position in reliance on the agent's act, the principal is estopped to deny that the agent's act was not authorized.'" *Id.* (quoting *Masuda*, 328 F.2d at 665). Here, the HSE attorneys held a reasonable belief that Mr. Wendt was acting within the scope of his authority as point-of-contact in giving them authorization to execute the Stipulation. Mr. Wendt interviewed the firm, believes that he signed the firm's retainer agreement, acted as primary point-of-contact, instructed HSE to serve as lead counsel, and frequently engaged in conversations about the Stipulation including with respect to Mr. Barone's wishes. Mr. Knights had also indicated to the HSE attorneys that his direction during the prior four years of litigation had come from Mr. Wendt, and that was consistent with the record. Accordingly, the Court finds that even if Mr. Wendt did not have actual authority, he certainly acted with apparent authority. *See Hallock*, 64 N.Y.2d at 231–32 (finding apparent

authority in attorney-client relationship where attorney represented clients through litigation, engaged in prior settlement negotiations, and appeared at conferences); *Greenstone v. Global Computer Corp.*, No. 619315/2019, 2023 WL 310314, at *2, 2023 N.Y. Misc. LEXIS 163, at *5–6 (N.Y. County Ct., Suffolk County Jan. 17, 2023) (finding employee acted with apparent authority where, *inter alia*, employee met with, retained, and exclusively dealt with the other party).

### B. Enforceability

The Court finds that the Stipulation was entered into with authority. Accordingly, because the Stipulation was entered into with authority and because Defendants have not shown good cause such as fraud, collusion, mistake, duress, or unconscionability, *see Katel Ltd. Liab. Co.*, 607 F.3d at 66, the Court finds that the Stipulation is enforceable.[4]

### VI. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to vacate the Stipulation (Dkt. No. 102) is **DENIED**; and it is further

**ORDERED** that Defendants' response to Plaintiffs' motion for summary judgment (Dkt. No. 89) is due by April 16, 2025 and that Plaintiffs' reply is due by April 23, 2025.

**IT IS SO ORDERED.**

Dated: April 9, 2025
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

---

[4] While the Court does not therefore need to address Defendant's argument that the Stipulation should be set aside because it causes "substantial prejudice," the Court notes that Plaintiffs persuasively argue that the Stipulation sets forth "undisputed facts and the application of established legal principles in the Second Circuit." (Dkt. No. 97, ¶ 7). And to the extent Defendants argue the Stipulation authorizes the same measure of damages against the individual Defendants as the company, (Dkt. No. 102-11, at 8), this is a misreading of the Stipulation. Plaintiffs stated at the evidentiary hearing that they do not seek to hold the individual Defendants to the same measure of damages.