UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UPSTATE NEW YORK ENGINEERS HEALTH FUND, by Deborah Spaulding, as Administrator; UPSTATE NEW YORK ENGINEERS PENSION FUND, by Deborah Spaulding, as Administrator; UPSTATE NEW YORK ENGINEERS S.U.B. FUND, by Deborah Spaulding, as Administrator; UPSTATE NEW YORK ENGINEERS TRAINING FUND, by Theron Hogle and Eugene Hallock, as Trustees; LOCAL 106 TRAINING AND APPRENTICESHIP FUND, by Daniel J. McGraw and James Logan, as Trustees; I.U.O.E. LOCAL 158 TRAINING FUND, by Theron Hogle and James Logan, as Trustees; OPERATING ENGINEERS LOCAL 17 TRAINING FUND, by James Smolinski, as Administrative Manager; CENTRAL PENSION FUND OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS AND PARTICIPATING EMPLOYERS, by its BOARD OF TRUSTEES; INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL NO. 17, by Gary Swain, as Business Manager; UPSTATE NEW YORK OPERATING ENGINEERS LOCAL 158, by Michael Lyons, as Business Manager,

5:20-cv-00431 (BKS/ATB)

                         Plaintiffs,

v.

CAMBRIA CONTRACTING, INC., FRANCIS V. BARONE, JR., Individually and as an Officer of Cambria Contracting, Inc., and TRICIA L. BARONE, Individually and as an Officer of Cambria Contracting, Inc.,

                         Defendants.

---

**Appearances:**

*For Plaintiffs:*
Jennifer A. Clark
Kenneth L. Wagner
Blitman & King LLP
Franklin Center - Suite 300
443 North Franklin Street
Syracuse, New York 13204

*For Defendants:*
R. Anthony Rupp, III
Aaron W. Knights
Jacob J. Honan

1

Marco Cercone
Rupp Pfalzgraf LLC
1600 Liberty Building
424 Main Street
Buffalo, New York 14202

Gerald Dandeneau
425 Broadhollow Rd. - Ste. 114
Melville, New York 11747

**Hon. Brenda K. Sannes, Chief United States District Judge:**

### ORDER

Having reviewed the parties' submissions regarding Plaintiffs' pending motion for summary judgment, the Court finds that the briefing is insufficient to enable the Court to resolve Plaintiffs' motion for summary judgment on their first, fourth and fifth causes of action. (Dkt. No. 89). The Court needs the parties to address the following questions in order to determine whether there is a material issue of fact regarding whether Defendants engaged in "covered work." At the oral argument on Wednesday August, 6, 2025 at 8:30 AM, the Court will direct further briefing as necessary.

### I.     BACKGROUND

1. Cambria argues it was engaging in "standalone industrial demolition and related asbestos abatement." (Dkt. No. 131-26, at 12).
    a. Can the Defendants provide more context for their projects?
    b. Do Plaintiffs agree with that characterization?

### II.    AMBIGUITY

2. Do the parties agree that the CBAs that predate 2012 and postdate 2021 are not operative to the dispute of whether Cambria was engaging in covered work during the 5,676.75 hours at issue?

3. If so, do the parties agree that the 2012-2016 Local 463 CBA, (Dkt. No. 89-28), and the 2016-2023 Local 463 CBA, (Dkt. No. 89-29), are the only two operative CBAs for the 4,700 hours claimed to be due to Local 463?

    a. If yes, do the parties agree that the two CBAs are substantially similar that the Court can look at just the most recent in evaluating whether Defendants conducted covered work?
    b. If no, can the parties provide cites in the record to all operative CBAs for the hours claimed to be due to Local 463?

4. Are the 976.75 hours allotted to Local 17 pursuant to the Local 17 Building CBA, the Local 17 Heavy and Highway CBA, or both?
    a. If Local 17 Building CBA, do the parties agree that the operative CBAs are the 2016-2019 Local 17 Building CBA, (Dkt. No. 89-32), and the 2019-2022 Local 17 Building CBA, (Dkt. No. 89-33)?
        i. If yes, do the parties agree that the two CBAs are substantially similar that the Court can look at just the most recent in evaluating whether Defendants conducted covered work?
        ii. If no, can the parties provide cites in the record to all operative building CBAs for the hours claimed to be due to Local 17?
    b. If Local 17 Heavy and Highway CBA, do the parties agree that the only operative CBAs are the 2018-2021 Local 17 Heavy and Highway CBA, (Dkt. No. 89-38), and 2021-2025 Local 17 Heavy and Highway CBA, (Dkt. No. 89-39)?
        i. If yes, do the parties agree that the two CBAs are substantially similar that the Court can look at just the most recent in evaluating whether Defendants conducted covered work?
        ii. If no, can the parties provide cites in the record to all operative heavy and highway CBAs for the hours claimed to be due to Local 17?

5. Do the parties each believe that the CBAs unambiguously support their position?

6. How do Defendants respond to Plaintiffs' argument, (Dkt. No. 146, at 15), that the CBAs unambiguously apply to "operating engineers" using the heavy equipment identified in the CBAs regardless of the nature of the project?

7. Does the fact that the Local 463 CBA is entitled "Heavy, Highway and Pipeline Construction," (Dkt. No. 131-26, at 12), limit the scope of the agreement?

8. How does the Local 463 CBA definition, (Dkt. No. 89-29, at 6) of "Highway and Heavy Construction" influence the scope of the CBA?
    a. In particular, what is the effect of the "including, but not limited to" part of the definition?

3

9. The Local 463 CBA "is of no force or effect on any" class of work not included in that definition. (Dkt. No. 89-29, at 3). How does that influence the scope of the CBA?

10. The Local 17 Building CBA says it "shall apply to the building construction site which includes the actual building, foundations, structural portions, interior portions of building, and site work in conjunction with the building agreement including utilities, parking lots and driveways undertaken as part of the building project." (Dkt. No. 89-32, at 6; Dkt. No. 89-33, at 6; Dkt. No. 89-34, at 6).
    a. Is the scope of the CBA limited to this definition?
    b. Does the CBA only apply to building construction sites?
    c. If Cambria was performing standalone industrial demolition, was there a building construction site?

11. The Local 17 Building CBA includes the word "demolition" one time—in a "note" that "[a]ll machines used in Demolition, in the Building and Heavy and Highway Construction Industry and claimed by the International Union of Operating Engineers Locals 17, 17A, 17B, and 17RA irrespective of power are classified as follows." (Dkt. No. 89-32, at 13; Dkt. No. 89-33, at 12; Dkt. No. 89-34, at 12).
    a. How does this reference to demolition equipment impact the scope of the CBA?
    b. Would this provision be meaningless or superfluous if demolition were not included within the scope of the CBA?
    c. The CBA goes on to list demolition machines. Do Defendants admit that they used those machines in the hours at issue?

12. The Local 17 Building CBA has a provision that the terms of the CBA "shall apply to all bargaining unit work specified in this agreement which has traditionally been performed by bargaining unit members." (Dkt. No. 89-32, at 24; Dkt. No. 89-33, at 23; Dkt. No. 89-34, at 23).
    a. How does this provision impact the scope of the CBA?
    b. Have bargaining unit members traditionally performed demolition work?

13. If the Local 17 Heavy and Highway CBAs are operative, what provisions support a finding that the CBA unambiguously covers or excludes demolition work?

14. Is the Local 158 CBA's explicit reference to demolition evidence of trade practice that collective bargaining agreements of this nature extend to demolition work?

15. Is it correct that Defendants have a past practice of remitting reports and contributions from 2001 to 2018 for employees who operated equipment to perform demolition work? If so, how should that impact the Court's interpretation of the relevant CBAs?

4

16. Does any of the analysis change with respect to Defendants' "asbestos abatement/removal work," (Dkt. No. 131-26, at 9), as opposed to Defendants' demolition work?

### III. EXTRINSIC EVIDENCE

17. Defendants argue that any ambiguity "must be construed against the drafters." (Dkt. No. 131-26, at 14 n.2). Do the Defendants have any caselaw to support this proposition?

18. In the event that the Court were to find the CBAs ambiguous, Defendants do not point to any extrinsic evidence in their briefs to support their interpretation. (*See generally* Dkt. No. 131-26; Dkt. No. 141-2). Do Defendants agree that the extrinsic evidence supports Plaintiffs' position? If not, what extrinsic evidence can the Defendants point to in support of their position?

19. Plaintiffs point to the International Union of Operating Engineers Constitution, (Dkt. No. 136-1), as extrinsic evidence. (Dkt. No. 146, at 16). Defendants argued that this document is new material improperly submitted on reply and not produced during discovery, that it is from May of 2023 which is after the time period at issue in this case, and that Defendants are not bound by it. (Dkt. No. 141-2, at 8). How do Plaintiffs respond?

20. Plaintiffs filed a letter, (Dkt. No. 142), providing two Local 463 CBAs. Defendants argue that Cambria did not sign these CBAs and is not a party to them. (Dkt. No. 143). Can the parties clarify the context of these documents? How do they interface with Cambria's Memorandum Agreements with Plaintiffs dated January 5, 2001 and November 3, 2003?

### IV. REOPENING DISCOVERY

21. Is it true that Defendants did not raise this "covered work" argument during discovery or in the course of litigation until their response to the motion for summary judgment?

22. Defendants argue that Plaintiffs should be precluded from submitting extrinsic evidence that was not produced during discovery. (Dkt. No. 143, at 1–2). Do Defendants have any caselaw support for this proposition, especially if they did not raise this argument about the scope of covered work until after the close of discovery?

23. Do Defendants admit that their operating engineers used the heavy equipment identified in the CBAs?

24. Do Defendants oppose Plaintiffs' request to reopen discovery? If Defendants would also seek to reopen discovery, what discovery would they seek?

25. Do Defendants also seek to submit additional extrinsic evidence? If yes, what extrinsic evidence would they submit?

## V.   MISCELLANEOUS

26. Defendants argue that "[t]he Plaintiffs' auditors failed to analyze whether the work performed constituted 'covered work' as defined by the CBAs—a threshold requirement for any contribution obligation." (Dkt. No. 131-26, at 5–6, 15–17). How do Plaintiffs respond?

27. Defendants briefly argue that "there is a factual dispute regarding the amount of contributions that allegedly are due and owing . . . that must be resolved at trial." (Dkt. No. 141-2, at 15). Do the parties dispute genuine issues of material fact aside from whether the work was covered?

Accordingly, it is hereby

**ORDERED** that the parties be prepared to address these questions at oral argument and in further briefing as directed by the Court.

**IT IS SO ORDERED.**

Dated: August 5, 2025
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

6