**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UPSTATE NEW YORK ENGINEERS HEALTH FUND,
by Deborah Spaulding, as Administrator; UPSTATE NEW
YORK ENGINEERS PENSION FUND, by Deborah
Spaulding, as Administrator; UPSTATE NEW YORK
ENGINEERS S.U.B. FUND, by Deborah Spaulding, as
Administrator; UPSTATE NEW YORK ENGINEERS
TRAINING FUND, by Theron Hogle and Eugene Hallock,
as Trustees; LOCAL 106 TRAINING AND
APPRENTICESHIP FUND, by Daniel J. McGraw and
James Logan, as Trustees; I.U.O.E. LOCAL 158
TRAINING FUND, by Theron Hogle and James Logan, as
Trustees; OPERATING ENGINEERS LOCAL 17
TRAINING FUND, by James Smolinski, as Administrative
Manager; CENTRAL PENSION FUND OF THE
INTERNATIONAL UNION OF OPERATING
ENGINEERS AND PARTICIPATING EMPLOYERS, by
its BOARD OF TRUSTEES; INTERNATIONAL UNION
OF OPERATING ENGINEERS LOCAL NO. 17, by Gary
Swain, as Business Manager; UPSTATE NEW YORK
OPERATING ENGINEERS LOCAL 158, by Michael
Lyons, as Business Manager,

5:20-cv-00431 (BKS/TWD)

                    Plaintiffs,

v.

CAMBRIA CONTRACTING, INC., FRANCIS V.
BARONE, JR., JR., Individually and as an Officer of
Cambria Contracting, Inc., and TRICIA L. BARONE,
Individually and as an Officer of Cambria Contracting,
Inc.,

                    Defendants.

---

**Appearances:**

*For Plaintiffs:*
Jennifer A. Clark
Kenneth L. Wagner
Blitman & King LLP
Franklin Center - Suite 300
443 North Franklin Street
Syracuse, New York 13204

*For Defendants:*
R. Anthony Rupp, III
Aaron W. Knights
Jacob J. Honan
Marco Cercone
Rupp Pfalzgraf LLC
1600 Liberty Building
424 Main Street
Buffalo, New York 14202

Gerald Dandeneau
425 Broadhollow Rd. - Suite 114
Melville, New York 11747

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.     INTRODUCTION

The Upstate New York Engineers Health Fund, Pension Fund, S.U.B. Fund, Training

Fund, as well as the Central Pension Fund, Local 106 Training and Apprenticeship Fund,

I.U.O.E. Local 158 Training Fund, and Operating Engineers Local 17 Training Fund—multi-

employer employee benefit plans as defined by 29 U.S.C. §§ 1002(3), (37)—along with Deborah

Spaulding, Theron Hogle, Eugene Hallock, Board of Trustees of the Central Pension Fund of the

International Union of Operating Engineers and Participating Employers, Daniel J. McGraw,

James Logan, and James Smolinski—all in fiduciary capacities for the various funds—and Gary

Swain on behalf of Local Union No. 17 and Michael Lyons on behalf of Local Union No. 158

(all together, "Plaintiffs"), bring this action pursuant to the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., and the Labor Management Relations Act of 1947, ("LMRA"), 29 U.S.C. § 185(a). (Dkt. No. 56). Plaintiffs sued Cambria Contracting, Inc. as well as Francis V. Barone, Jr. and Tricia L. Barone individually and as officers of Cambria. (*Id.*). Plaintiffs allege that Defendants failed to timely remit contributions, breached their fiduciary duties, violated various other ERISA provisions, and violated collective bargaining agreements. (*Id.*).

Plaintiffs moved for summary judgment on July 25, 2024. (Dkt. No. 89). After the summary judgment motion was fully briefed, (Dkt. No. 89-53, 131-26, 136-27), the Court ordered additional briefing from Plaintiffs on the question of "whether there are genuine issues of material fact regarding whether Cambria Contracting Inc. performed 'covered work' within the meaning of the applicable CBAs." (Dkt. No. 145). Plaintiffs filed the requested brief. (Dkt. No. 146). The Court later held a hearing on the motion. (Text Minute Entry, Aug. 6, 2025). During the hearing, the Court granted the motion on Plaintiffs' second cause of action which sought a review and audit of certain books and records; dismissed Defendants' ninth, tenth, eleventh, twelfth, and thirteenth affirmative defenses; and denied the remainder of the motion without prejudice and with leave to renew Plaintiffs' first, fourth, and fifth causes of action. (*Id.*).

Presently before the Court is Plaintiffs' renewed motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 160). The motion is fully briefed. (Dkt. Nos. 160-14, 161, 162, 163, 171, 173). For the reasons that follow, Plaintiffs' motion is denied in part and granted in part.

## II.    FACTS[1]

The parties have stipulated that from January 1, 2012 through September 30, 2021, Cambria was bound to collective bargaining agreements ("CBAs") with International Union of Operating Engineers, Local Union No. 463 ("Local 463"), International Union of Operating Engineers, Local Union No. 17 ("Local 17"), and Upstate New York Operating Engineers, Local Union No. 158 ("Local 158"). (Dkt. No. 89-47, ¶ 1). The parties have submitted that the following CBAs are relevant:

as pertaining to Local 463;

> (1) the 2008-2012 Highway/Heavy Construction Agreement and Tunnel and Shaft Construction Agreement Between Labor Relations Division Western New York Region Associated General Contractors of America New York State Chapter, Inc. and International Union of Operating Engineers Local Union No. 463 AFL-CIO Niagara Falls, New York ("2008-2012 Local 463 Heavy Highway CBA"),

> (2) the 2012-2016 and 2016-2020 Highway/Heavy Construction Agreement and Tunnel and Shaft Construction Agreement Between Labor Relations Division Western New York Region Associated General Contractors of America New York State Chapter, Inc. and International Union of Operating Engineers Local Union No. 463 AFL-CIO Niagara Falls, New York ("2012-2016 and 2016-2020 Local 463 Heavy Highway CBAs") (together, the "Local 463 Heavy Highway CBAs"),

> (3) the 2000-2003 Engineers Agreement ("2000-2003 Local 463 Building CBA"), and

> (4) the 2015-2018 Engineers Agreement ("2015-2018 Local 463 Building CBA"),

as pertaining to Local 17;

> (1) the June 1, 2016-May 31, 2019 Agreement between Independent Building Contractors of WNY and the International Union of Operating Engineers Locals #17, 17A, 17B, 17RA ("2016-2019 Local 17 Building CBA"),

---

[1] The facts, which are undisputed unless otherwise noted, are drawn from Plaintiffs' Rule 56.1 Statement of Material Facts, (Dkt. No. 89-1), and Defendants' Response to Plaintiffs' Statement of Material Facts, (Dkt. No. 131), to the extent the facts are well-supported by pinpoint citations to the record, as well as the exhibits attached thereto and cited therein, including the Stipulation of Facts and Liability, (Dkt. No. 89-47). The facts are construed in the light most favorable to the non-moving party. *See Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

(2) the June 1, 2019-May 31, 2022 Agreement Between Independent Building Contractors of WNY and the International Union of Operating Engineers Locals #17, 17A, 17B, 17RA ("2019-2022 Local 17 Building CBA) (together, the "Local 17 Building CBAs"), and

(3) the 2013-2015 Agreement between Independent Residential Contractors and the International Union of Operating Engineers Local 17C Buffalo, New York ("Local 17C Residential CBA") (all together, the "Local 17 CBAs"),

and as pertaining to Local 158;

(1) the June 1, 2012-February 28, 2015 Building Agreement between 'The Associations' and Local No. 158 of the International Union of Operating Engineers ("2012-2015 Local 158 CBA"), and

(2) the June 1, 2015-February 28, 2019 Building Agreement between 'The Associations' and Local No. 158 of the International Union of Operating Engineers ("2015-2018 Local 158 CBA") (all together, the "Local 158 CBAs").

(*See* Dkt. No. 89-47, ¶1; Dkt. No. 160-14, at 5-6; Dkt. No. 161, at 2; Dkt. No. 171, at 3–4).

The CBAs to which the parties stipulated require[2] Cambria to remit contributions to various funds for work covered by the CBAs. (Dkt. No. 89-1, ¶ 2, 5; Dkt. No. 131, ¶ 2, 5). They also require Cambria to make deductions from employees' wages for non-ERISA benefit fund contributions, such as union dues, political action committee contributions, and defense fund monies. (Dkt. No. 89-1; ¶ 6, Dkt. No. 89-25, ¶ 20 (*see* citations therein); Dkt. No. 131, ¶ 6). Although the parties agree that Cambria's employees worked 5,676.75 hours covered by the geographic and territorial work jurisdictions of the CBAs, they dispute whether the scope of the work performed was covered by the respective CBAs. (Dkt. No. 160-14, at 1–2; Dkt. No. 161, at 1). Plaintiffs allege that the work was covered, and that Defendants owe unpaid fringe benefit

---

[2] The parties dispute whether Defendants are bound by the 2015-2018 Local 463 Building CBA. *See infra* Section IV.B.2.

contributions and deductions. (Dkt. No. 89-1, ¶ 22). Defendants, however, deny owing any
contributions and deductions to Plaintiffs. (Dkt. No. 131, ¶ 22).

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if
all submissions taken together "show that there is no genuine issue as to any material fact and
that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477
U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact
is material if it "might affect the outcome of the suit under the governing law," and is genuinely
in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving
party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d
Cir. 2005).

Where here, the moving party bears the burden of persuasion at trial, it "must support its
motion with credible evidence—using any of the materials specified in Rule 56(c) [of the Federal
Rules of Civil Procedure]—that would entitle it to a directed verdict if not controverted at trial."
*Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting); *Sorano v. Taggart*, 642 F. Supp. 2d 45,
50 (S.D.N.Y. 2009). Put another way, the moving party's evidentiary showing "must be
sufficient for the court to hold that no reasonable trier of fact could find other than for the
moving party." *Liberty Mut. Ins. Co. v. Sterling Ins. Co.*, 632 F. Supp. 3d 83, 88 (E.D.N.Y.
2022); *Qureshi v. Costco Wholesale Corp.*, No. 20-cv-04086, 2021 WL 5163232, at *3, 2021
U.S. Dist. LEXIS 214615, at *7–8 (E.D.N.Y. Nov. 5, 2021) ("But where the moving party also
bears the ultimate burden of persuasion at trial, it must show 'why the record is so one-sided as
to rule out the prospect of the nonmovant prevailing.'" (quoting 10A *Wright & Miller's Federal
Practice and Procedure* §2727.1 (4th ed. 2021)). If the moving party meets this initial burden,
the nonmoving party must "either . . . produce evidentiary materials that demonstrate the

existence of a 'genuine issue' for trial or . . .  submit an affidavit requesting additional time for discovery." *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

## IV.    DISCUSSION

### A.    Plaintiffs' Motion to Strike Defendants' Argument that the CBAs Did Not Cover the Work Performed

In their renewed motion for summary judgment, Plaintiffs move to strike Defendants' covered work argument, which Defendants asserted in their response to Plaintiffs' initial motion for summary judgment, (Dkt. No. 131-26). (Dkt. No. 160-15, at 3). Plaintiffs contend that this argument is insufficient and improper under Federal Rule of Civil Procedure 12(f), and that the

Court lacks jurisdiction to hear this argument under Federal Rule of Civil Procedure 12(h)(3). (Dkt. No. 160-14, at 1).[3] For the following reasons, the Court denies Plaintiffs' motion.

Plaintiffs allege that "Defendants have waived their new defense/claim," under Rule 12(f) of the Federal Rules of Civil Procedure. (*Id.* at 7). Rule 12(f), however, does not permit the relief Plaintiffs seek. Rule 12(f) provides that a court "may strike from *a pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Pro. 12(f) (emphasis added). But Defendants' argument is not in a pleading; it is made in response to Plaintiffs' original motion for summary judgment, (Dkt. No. 89). The Federal Rules of Civil Procedure "explicitly distinguish between pleadings and motions." *Canadian Overseas Ores, Ltd. v. Compania de Acero del Pacifico S.A.*, 727 F.2d 274, 277 (2d Cir. 1984). Rule 7(a) defines pleadings to include complaints, answers, and third-party complaints. Fed R. Civ. P. 7(a). It excludes responses to summary judgment motions. *See id.* Because Defendants' argument is not part of a pleading, the Court denies Plaintiffs' motion.[4] *C.f. Browdy v. Lantz*, No. 03-cv-1981, 2006 WL 389539, at *1, 2006 U.S. Dist. LEXIS 9203, at *4 (D. Conn. Feb. 17, 2006) ("Because a motion for summary judgment is not a pleading, the plaintiff's motion [to strike on the basis of Rule 12(f) of the Federal Rules of Procedure] is denied.").

Plaintiffs next argue that "the Court lacks jurisdiction to address Defendants' new defense/claim since Defendants were required to raise that defense/claim in arbitration as

---

[3] Plaintiffs attached to their brief, (Dkt. No. 162), the Affidavit of Kennth L. Wagner in support of their motion to strike. (Dkt. No. 162-2). Defendants move to strike this affidavit, its exhibit, and any reference to it in Plaintiffs' briefs. (Dkt. No. 164). Because this affidavit is not relevant to Plaintiffs' motion to strike under Fed. R. Civ. P. 12(f) and 12(h)(3), the Court did not consider the affidavit, and therefore denies Defendants' motion as moot.

[4] To the extent Plaintiffs do not rely on Rule 12(f) of the Federal Rules of Civil Procedure to argue that Defendants waived their covered work argument, the Court finds that their cited authority does not entitle them to the relief they seek, either. The cases to which Plaintiffs cite, (Dkt. No. 160-14, at 8), pertain to waiver of *affirmative defenses*, not to ordinary defenses to a claim.

required by CBAs." (Dkt. No. 160-14, at 8). The parties, however, did not agree to arbitrate this dispute.

The 2015-2018 Local 463 Building CBA states that if there is a grievance "arising out of the 2015-2018 Local 463 Building CBA . . . [i]n the event that the grievance is not settled by the Business Agent and the Employer, then either party *may* serve notice in writing on the other party, *requesting* that the grievance be referred to the Arbitration Committee[.]" (Dkt. No. 142-2, at 15) (emphasis added). This provision does not mandate arbitration; it permits it.

The Local 17 Building CBAs provide that in the event of a dispute over "the interpretation, application or meaning of any provision" in the CBAs, "the complaining party *can* refer the dispute to arbitration."[5] (Dkt. No. 89-32, at 11; Dkt. No. 89-33, at 11). Here, arbitration is permissive, not mandatory. The same is true for the Local 17 Residential CBA, which includes an identical provision as the ones in the Local 17 Building CBAs. (Dkt. No. 89-40, at 7).

The Local 158 CBAs specifically exclude this type of dispute from arbitration. The 2015-2018 Local 158 CBA provides that "[v]iolations concerning wages, hours, or fringe benefit contributions shall not be subject to the arbitration provisions of this Article." (Dkt. No. 89-10, at 18). The 2012-2015 Local 158 CBA contains the same provision, but also adds that "[t]he Health Fund, Pension Fund, S.U.B. Fund, Training Fund, and Central Pension Fund, and all other Funds identified in this Agreement are not bound by the grievance and arbitration procedure of this Agreement." (Dkt. No. 136-15, at 13). The Court finds no basis for Plaintiffs' motion to strike

---

[5] The parties agree that all of the Local 17 Building CBAs are relevant to this dispute, (*see* Dkt. No. 160-14, at 5; Dkt. No. 161, at 2), However, for purposes of determining whether the work Cambria's employees performed was covered by the Local 17 Building CBAs, Plaintiffs contend that the Court may review only the 2016-2019 Local 17 Building CBA. (Dkt. No. 160-14, at 6), while Defendants submit that the Court should review only the 2019-2022 Local 17 Building CBA, (Dkt. No. 161, at 2). The Court has reviewed both CBAs, and finds that the text of the provisions the parties cited to are identical or substantially the same, so the Court will provide parallel citations to both CBAs.

Defendants' defense under Rule 12(h)(3) of the Federal Rules of Civil Procedure for a lack of subject matter jurisdiction and therefore denies the motion.

### B.    Plaintiffs' Remaining Causes of Action

Plaintiffs' remaining causes of action pertain to delinquent fringe benefit contributions and deductions. (Dkt. No. 56). They seek to recover these contributions and deductions, interest, liquidated damages, audit fees, attorneys' fees, and other costs from Cambria and request judgment against them in the amount of $774,764.39. (Dkt. No. 56, at 22–23; Dkt. No. 160-15, at 3). Plaintiffs also seek to recover unpaid contributions/trust assets, interest, audit fees, attorneys' fees, and other costs from Defendants Francis V. Barone, Jr. and Tricia L. Barone and request judgment against the individual Defendants in the amount of $497,349.14. (Dkt. No. 56, at 24–25; Dkt. No. 160-15, at 3). Lastly, Plaintiffs ask the Court to retain jurisdiction over this action to hear an additional motion and accept supplemental evidence supporting the motion based on a forthcoming audit for the period October 1, 2021 to date. (Dkt. No. 160-15, at 3). If Defendants do not produce all the requested records, Plaintiffs request an order from the Court allowing Plaintiffs to submit supplemental affidavits regarding the monies due under the formula set forth in Plaintiffs' third cause of action within the amended complaint. (*Id.*)

Defendants admit that after 2017, Cambria did not remit benefit contributions and deductions to the Plaintiff Funds. (Dkt. No. 161, at 13). However, they argue that because Cambria did not perform covered work as defined by the applicable CBAs, the Court must deny Plaintiffs' motion.[6] (*See id.* at 3–8.)

---

[6] Defendants also argue that genuine issues of material fact exist as to the amount of alleged contributions owed and whether Cambria is entitled to an offset or return of contributions. (Dkt. No. 161, at 17). The Court addresses the issue of damages *infra* Section IV.C. The Court will not consider whether Cambria is entitled to an offset or return of contributions because it found that Defendants abandoned this defense. (Dkt. No. 149, at 3–4; *see also* Dkt. No. 159).

### 1.  Contract Interpretation Principles

In deciding the remaining issue on summary judgment, whether the applicable CBAs cover the work Defendants performed, the Court must interpret the meaning and scope of the CBAs. In doing so, "ordinary principles of contract law [apply], at least when those principles are not inconsistent with federal labor policy." *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015). The Court "construes the terms of a contract as a matter of law," *Jessica Howard Ltd. v. Norfolk S. Ry.*, 316 F.3d 165, 168 (2d Cir. 2003), and its "primary objective is to give effect to the intent of the parties as revealed by the language they chose to use." *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).

The initial interpretation of a contract includes "the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998) (internal quotation marks and citation omitted). Ambiguity does not exist when contract language has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) (quoting *Breed v. Ins. Co. of N. Am.*, 385 N.E.2d 1280, 1282 (N.Y. 1978)). Conversely, "[a] contract is ambiguous when it is "reasonably susceptible of more than one interpretation." *Chimart Assocs. v. Paul*, 489 N.E.2d 231, 233 (N.Y. 1986); *see also Health-Chem Corp. v. Baker*, 737 F. Supp. 770, 773 (S.D.N.Y. 1990) ("[A] term is ambiguous when it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" (quoting *Walk–In Med. Ctrs. v. Breuer Cap. Corp.*, 818 F.2d 260, 263 (2d Cir. 1987))).

11

"Ambiguity is determined by looking within the four corners of the document, not to outside sources." *Kass v. Kass*, 696 N.E.2d 174, 180 (N.Y. 1998). "Clear contractual language does not become ambiguous simply because the parties to the litigation argue different interpretations." *Maniolos v. United States*, 741 F. Supp. 2d 555, 569 (S.D.N.Y. 2010); *see also Seiden Assocs., Inc.*, 959 F.2d at 428 (ambiguity does not exist "where one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning" (quoting *Bethlehem Steel Co. v. Turner Constr. Co.*, 141 N.E.2d 590, 593 (N.Y. 1957))). If the language is unambiguous, "extrinsic evidence may not properly be received." *Seiden Assocs., Inc.*, 959 F.2d at 428. However, if the language is ambiguous, "summary judgment may be granted only if the ambiguities may be resolved through extrinsic evidence that is itself capable of only one interpretation, or where there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case." *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008).

### 2. Local 463 CBAs

Plaintiffs previously argued that Defendants owed contributions and deductions pursuant to the Local 463 Heavy Highway CBAs. (*See* Dkt. No. 89-1, ¶¶ 1–6; Dkt. No. 89-47, ¶ 1; Dkt. No. 89-2, ¶ 19; Dkt. No. 89-3, at 1–36). Plaintiffs changed their position after Defendants argued on summary judgment that the work Cambria performed was not covered by the Local 463 Heavy Highway CBAs. (*See* Dkt. No. 160-14, at 3; Dkt. No. 162, at 3). Now, Plaintiffs "do not agree that the Local 463 Heavy Highway CBAs . . . are the operative CBAs," (Dkt. No. 160-14, at 3), because "Defendants admit that they did not perform work on highway, road or pipeline projects within the meaning of the Heavy Highway CBAs," (Dkt. No. 162, at 3). Instead, Plaintiffs claim that the 2015-2018 Local 463 Building CBA, (Dkt. No. 142-2), is operative,

(Dkt. No. 160-14, at 5–6), because "Defendants' contracts, timesheets and project lists establish that their operators performed work on building projects." (Dkt. No. 162, at 3).[7]

After reviewing the parties' submissions, the Court ordered additional briefing on the preliminary question of whether Defendants are bound by the 2015-2018 Local 463 Building CBA. (Dkt. No. 168). Plaintiffs argue that Defendants are bound because they executed a memorandum of agreement in 2003, consenting to abide by the terms of a 2000-2003 Local 463 Building CBA that renewed. (Dkt. No. 171, at 3). In the alternative, Plaintiffs submit that Defendants adopted the CBA because they "operated by the terms and conditions embodied in the Local 463 Building CBA (with the exception of paying their delinquencies); acknowledged that they were bound to the CBA by virtue of Local 463 Building remittance reports; and realized the benefits of the Local 463 Building CBA." (*Id.* at 6–7). Defendants disagree. Although they concede that the memorandum of agreement binds Cambria to the 2000-2003

---

[7] As a preliminary matter, the Court rejects Defendants' argument that Plaintiffs should be precluded from bringing a claim under the 2015-2018 Local 463 Building CBA because it was not in their complaint and is barred by Rule 37 of the Federal Rules of Civil Procedure. (Dkt. No. 173, at 1–3).

The Amended Complaint, (Dkt. No. 56), puts forth a cause of action for unpaid contributions and deductions under ERISA and the LMRA. Defendants' argument does not take into account the fact that Plaintiffs' cause of action has not changed; rather, Plaintiffs have responded to Defendants' argument challenging the scope of covered work. In response to that argument, Plaintiffs submitted that the contributions and deductions are due under the 2015-2018 Local 463 Building CBA rather than the Local 463 Heavy Highway CBAs. The authority to which Defendants cite is inapposite. It pertains to breach of contract actions where a party added a new claim in the middle of summary judgment briefing. *See Roche Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 219–220 (S.D.N.Y. 2013*)* (rejecting breach of contract counterclaim where the defendant's pleading alleged breach of one term of the contract, but the summary judgment briefing asserted breach of an *additional* term of the contract); *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997) (rejecting contract impairment claim brought under Puerto Rican law where the plaintiffs' complaint alleged six events under which the contract was impaired, but the summary judgment briefing asserted an *additional* circumstance under which the contract was impaired).

Here the CBA, (Dkt. No. 142-2), was already in the record during the summary judgment hearing on August 6, 2025. During that hearing, the Court stated that "[a]nything that's in the record right now the Court can consider," (*See* Dkt. No. 149, at 47). Moreover, the Court previously asked Defendants to brief the question, "Do Defendants have any caselaw support for this proposition [that Plaintiffs should be precluded from submitting evidence that was not produced during discovery], especially if [Defendants] did not raise this argument about the scope of covered work until after the close of discovery," (Dkt. No. 147, at 5), and Defendants did not, (*see generally* Dkt. No. 161; Dkt. No. 163). Therefore, the Court considers the 2015-2018 Local 463 Building CBA.

Local 463 Building CBA, Defendants contend that it does not apply after March 31, 2006, and deny that Cambria, by its conduct, adopted it past that date. (Dkt. No. 173, at 3–6).

Cambria executed a memorandum of agreement ("MOA") with Local 463 on November 3, 2003. (Dkt. No. 136-2, at 3). In that agreement, Cambria agreed to be bound by a "2000-2003 Engineers Agreement" between an industry association and Local 463 ("2000-2003 Local 463 Building CBA"). (*Id.*). The 2003 MOA provides a termination date of March 31, 2006. (*Id.*). It states that the 2000-2003 Local 463 Building CBA is "hereby extended for a period of three (3) years to commence on the 13th day of May 2003 to terminate on the 31st day of March 2006, subject to" certain specified "wage modifications and changes." (*Id.*). After itemizing wage modifications and changes not relevant here, the 2003 MOA states that "[a]ll other terms and conditions of the existing 2000-2003 Agreement herein modified or changed to remain in full force and effect until the additional language changes and deletions follow." (*Id.*).

There was a renewal provision in the 2000-2003 Local 463 Building CBA. (Dkt. No. 171, at 21). The renewal provision provides:

> This Agreement shall remain in full force and effect until March 31, 2003, and through an extended term or terms as herein provided; and thereafter unless either of the parties hereto give notice of their desire to alter the terms of the same in accordance with the manner herein provided.

(*Id.*).

Plaintiffs argue that the renewal provision in the 2000-2003 Local 463 Building CBA applies because the CBA was extended and that it continued in full force and effect after March 2006 because Defendants never gave notice of their desire to alter the terms of the CBA. (*Id.* at 3). Defendants, on the other hand, argue that the termination provision in the 2003 MOA governs and that the 2000-2003 Local 463 Building CBA terminated on March 31, 2006. (Dkt. No. 173, at 3–4).

14

The 2003 MOA is silent on whether it adopts the 2000-2003 Local 463 Building CBA's renewal provision. The 2003 MOA does not state that the original terms and conditions of the CBA which were unchanged "remain in full force and effect[.]" Instead it provides that the terms and conditions *modified or changed* by the 2003 MOA "remain in full force and effect[.]"And the provision on which Plaintiffs rely, the provision extending the CBA, states that the CBA terminates on March 31, 2006. Thus, it is not clear whether the parties intended to merely substitute the March 31, 2003 date in the renewal provision of the CBA with the March 31, 2006 date in the MOA, or whether the parties intended for the CBA to terminate on March 31, 2006. The Court therefore finds that the 2003 MOA is ambiguous.

The Court thus turns to the extrinsic evidence, *see Topps Co.*, 526 F.3d at 68, and may consider the past practice of the parties. *See New England Health Care Emps. Welfare Fund v. iCARE Mgmt., LLC*, 886 F. Supp. 2d 82, 103 (D. Conn. 2012) (citing *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 131–32 (2d Cir. 2005) (stating that a court may consider extrinsic evidence of the parties' past practices in interpreting an ambiguous provision of a CBA); *see also Roberts v. New York*, 911 F. Supp. 2d 149, 175 (N.D.N.Y. 2012) (considering the past practices of the parties to determine their intent regarding certain provisions of a collective bargaining agreement).

Plaintiffs identify various remittance reports in support of their argument that Cambria adopted the 2015-2018 Local 463 CBA. The Court considers whether these reports evidence that the 2000-2003 Local 463 Building CBA renewed. Plaintiffs identify four remittance reports labeled "Local 463 – BUILDING INDUSTRY" that Defendants submitted for work performed by a Local 463 union member from December 2006 to March 2007. (*See* Dkt. No. 136-11, 2–5). Each report states that "[b]y submitting this remittance report . . . the Employer agrees that it is

bound to a collective bargaining agreement with the International Union of Operating Engineers Local Union No. 17, 106, 463, 545, and/or 832[.]" (*Id.*). Second, Plaintiffs identify remittance reports entitled "Local 463 – HEAVY HIGHWAY" for one employee from 2012 through 2017. (*See* Dkt. No. 136-12). Defendants disagree that this evidence establishes that Defendants intended to be bound by the Local 463 Building CBA after March 31, 2006. (*See* Dkt. No. 173, at 5–6). They argue that "Cambria's submission of four remittance reports for one employee nearly 19 years ago fails to establish a course of conduct that perpetually binds Cambria to the Local 463 Building CBA." (*Id.* at 5).

Plaintiffs' evidence does not necessarily indicate that the 2000-2003 Local 463 Building CBA renewed, and thus, that Cambria is bound by the 2015-2018 Local 463 Building CBA. The evidence that Cambria remitted reports for one Local 463 union member for four months in 2006-2007 does not require a trier of fact to conclude that Defendants were bound to the 2015-2018 CBA. These reports acknowledge Cambria's agreement to be bound "to *a* collective bargaining agreement," (Dkt. No. 136-11, at 2–5) (emphasis added), but do not specify to *which* collective bargaining agreement it agreed to be bound. Although Cambria remitted reports for contributions and deductions for one employee from 2012 through 2017, these reports were submitted under the title, "Local 463 – HEAVY HIGHWAY," not "Local 463 – BUILDING INDUSTRY." (*See* Dkt. No. 136-12). This evidence suggests that Cambria remitted reports pursuant to the Local 463 Heavy Highway CBAs, not the 2015-2018 Local 463 Building CBA.

This extrinsic evidence is susceptible to more than one interpretation. While a trier of fact may find that Cambria intended the 2000-2003 Local Building CBA to extend past March 31, 2006, a fact-finder may also find that the CBA was not extended into 2015-2018 based upon four remittance reports in 2006 and 2007.

The Court cannot resolve, based on the summary judgment record, whether Defendants are bound by the 2015-2018 Local 463 Building CBA because the 2003 MOA is ambiguous, and the extrinsic evidence is not susceptible to only one interpretation. Plaintiffs are thus not entitled to summary judgment on their cause of action pertaining to the 2015-2018 Local 463 Building CBA.[8] [9] *See Shepley v. New Coleman Holdings, Inc.*, 174 F.3d 65, 72 n.5 (2d Cir. 1999) (stating that courts may resolve an ambiguous agreement on the extrinsic evidence only if "the extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law.").

### 3. Local 17 Building CBAs

Both parties claim that the Local 17 Building CBAs are unambiguous, but each advances a different interpretation of them. According to Defendants, the Local 17 Building CBAs do not cover the type of work Cambria performed: "pure demolition work" that "was not connected

---

[8] Plaintiffs' payroll auditor, Michael Tarby, reallocated 262.50 hours to the Local 463 Building CBA. (Dkt. No. 136-13, at ¶ 21 (*see infra* Section IV.C. for more on Tarby's reallocation)). Tarby assigned 252 of those hours, which were worked by one employee, to Local 463's jurisdiction "[i]n accordance with the Funds' Collections Policy and the Court's burden shifting analysis under ERISA" because "Defendants did not . . . produce any records to show where [the employee] worked [those] 252 hours in 2016." (Dkt. No. 171, at 2). Plaintiffs note:

> Regardless of the Court's finding concerning the Local 463 Building CBA, Defendants must still remit contributions for the 252 hours worked by employee Hickey as an operating engineer. Defendants failure to maintain and produce records identifying where the hours were worked . . . does not deprive the Plaintiffs of their right to the contributions due on behalf of employees.

(*Id.* at 2 n.1). Defendants did not respond to this argument, (*see generally* Dkt. No. 173), and the Court directs them to explain their position on where these hours should be allocated in their pre-trial submissions.

[9] Defendants' position is that "because the CBAs are unambiguous, extrinsic evidence is neither necessary nor appropriate." (Dkt. No. 161, at 16). However, Defendants also state that they "reserve the right to present such evidence if the Court finds ambiguity." (*Id.* at 17). Defendants, however, have had ample opportunity to submit evidence. Before the parties submitted any briefing on Plaintiffs' renewed summary judgment motion, the Court stated during the August 6, 2025 hearing that "the parties may submit exhibits if they need in the renewal motion if there need to be exhibits submitted." (Dkt. No. 149, at 47). Defendants did not provide any extrinsic evidence in the renewal round of summary judgment briefing, this case is now set for trial, and the Court will not consider any new submissions.

with actual construction or site development." (Dkt. No. 161, at 2).[10] Plaintiffs argue that the

CBAs are not limited by the type of work performed; rather, they apply to "the operating

engineers who used the heavy equipment identified in the CBAs." (Dkt. No. 160-14, at 7).

To support their interpretation, Defendants rely on a clause in Article 1, Purposes and

Principles:

> This agreement shall apply to the building construction site which includes the actual building, foundations, structural portions, interior portions of building, and site work in conjunction with the building agreement including utilities, parking lots, and driveways undertaken as part of the building project.

(Dkt. No. 89-32, at 6; Dkt. No. 89-33, at 6). Defendants argue that this language "establishes the

boundaries of the CBA[s]," and that the phrases "the building construction site" and "site work

in conjunction with the building agreement" do not include "[d]emolition where an existing

structure is torn down without any simultaneous construction." (Dkt. No. 161, at 5–6).

Plaintiffs argue that this clause does not actually limit the scope of the CBAs because it is

contained in the "whereas clause." (Dkt. No. 160-14, at 11). The Court rejects that argument.

The clause appears in a separate paragraph from the whereas clause and it is not preceded by the

term "whereas." Moreover, its contents do not comport with the type of information usually

included within a whereas clause. *See Recital*, Black's Law Dictionary (12th ed. 2024) (defining

recital, also termed a whereas clause, as "[a] preliminary statement in a contract or deed

explaining the reasons for entering into it or the background of the transaction, or showing the

---

[10] Defendants' assertion that none of their demolition work was succeeded by site development or future construction (*see* Dkt. No. 161, at 2), is demonstrably false. (*See* Dkt. No. 131-4, at 12 ("Job: Donovan Building Renovations), 14 ("demolition for the Proposed Convenience Store"), 16 ("Repair Building B and Building C Penthouse exterior"), 26 ("Wegman's Demolition (Future Cabela's)"), 28 ("[t]he additional work was related to the Proposed Guitar Center"), 29 ("demolition of 34 Chestnut Street for the Proposed Lockport Ice Arena & Sports Complex"), 40 ("demolish all buildings for the future Wal-Mart"), 43 ("install precast concrete block wall"), 44 ("site earthwork for the Whole Foods site"), 65 ("Project: American Harley Davidson Renovation"), 70 ("select demolition for the Proposed Five Below"), 99 ("Job: Facade & Bldg Reno Frmr OTB"), 104 ("site work related to the renovation of the Yard Update project").

existence of particular facts); *Nova Grp./Tutor-Saliba v. United States*, 87 F.4th 1375, 1380 (Fed. Cir. 2023) ("Recitals are 'explanations of the circumstances surrounding the execution of the contract.'" (quoting 17A C.J.S. Contracts § 420)); *Sprint Nextel Corp. v. Wireless Buybacks Holdings*, 938 F.3d 113, 127 (4th Cir. 2019) ("Contracts often contain recitals: provisions that do not make binding promises but merely recite background information about factual context or the parties' intentions."). Even if the clause was part of the whereas clause, Plaintiffs have not cited any authority rendering the clause ineffective, or even less effective, than the other parts of the CBAs. Instead, the cases to which Plaintiffs cite suggest that a whereas clause does not create any contractual promises or obligations. *See New York v. United Parcel Serv.*, 253 F. Supp. 3d 583, 662–663 (S.D.N.Y. 2017), *aff'd* 942 F.3d 554 (2d. Cir. 2019) (finding that adopting the defendant's interpretation of the whereas clause would obligate the plaintiff to take an action which the contract does not require); *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103–104 (2d Cir. 1985) (finding that construing the whereas clause to bind a party to a prior version of the contract would create an obligation absent from the current contract). Here, the provision from Article 1, Purposes and Principles does not create any contractual obligations; instead, it describes what the agreement applies to.

According to Defendants, because the Article 1 clause references "site work in conjunction with the building agreement," (Dkt. No. 89-32, at 6; Dkt. No. 89-33, at 6), and "undertaken as part of the building project," (Dkt. No. 89-32, at 6; Dkt. No. 89-33, at 6), it does not cover the situation in which "an existing structure is torn down without any simultaneous construction." (Dkt. No. 161, at 6). Neither party has addressed the terms, "building agreement" or "building project." It is unclear whether the term "building agreement" refers to an agreement *to build*, or

whether it means an agreement *regarding a building*, such as erecting a building, renovating a building, or demolishing a building. The same goes for the term "building project."

In any event, it is not clear why Defendant's construction is unambiguously correct. Plaintiffs point to other provisions in the CBAs to support their argument that the CBAs unambiguously cover "employees in the 'classifications of work' listed in the CBAs, with 'classifications of work' being the use of the heavy equipment/machines listed in the CBAs." (Dkt. No. 160-14, at 12). For example, Plaintiffs cite to a provision in Article III, Union Recognition and Security, which provides:

> The Employer hereby recognizes and acknowledges the Union as the sole and exclusive bargaining representative of *all Employees in the classifications of work covered by this Agreement, and the schedules attached and made part thereof*, namely Engineers, Apprentice Engineers (also referred to as Oilers), Maintenance Engineers (also referred to as Mechanics), Oilers (also referred to as Apprentice Engineers), Firemen, Maintenance Welders, Master Mechanics and Assistant Master Mechanics *and all other work within the jurisdiction of the Union and all persons performing the classes of work covered by this Agreement*.

(Dkt. No. 89-32, at 10; Dkt. No. 89-33, at 10) (emphasis added). These classifications are contained in Article XXV, Wage Rates and Classifications. (*See generally* Dkt. No. 89-32, at 33–44; Dkt. No. 89-33, at 32–42). "Classification A" and "Classification B" each list specific machinery, equipment, and positions. (Dkt. No. 89-32, at 35–39; Dkt. No. 89-33, at 33–42.).

Plaintiffs also cite to Article V, Definition and Jurisdiction, which states that "[a]ll machines used in Demolition, in the Building and Heavy and Highway Construction Industry and claimed by the International Union of Operating Engineers Locals 17, 17A, 17B, and 17RA irrespective of power are classified as follows . . ." (Dkt. No. 89-32, at 13; Dkt. No. 89-33, at 12). Article V then enumerates the various machines and equipment which Defendants agree their employees used. (Dkt. No. 89-32, at 13–15; Dkt. No. 89-33, at 12–15; Dkt. No. 161, at 7). Within that list, Plaintiffs emphasize "any Machine, irrespective of power, when used in the

20

Building Construction Industry and normally operated by an Operating Engineer." (Dkt. No. 89-32, at 13; Dkt. No. 89-33, at 13).

Plaintiffs further cite to a provision governing "work disputes" which states:

The Employer agrees that the terms of this Agreement shall apply to all bargaining unit work specified in this agreement which has traditionally been performed by bargaining unit members. . . .The parties recognize that there may be pieces of equipment, or types of work not listed in this agreement which both the Union and another labor organization(s) would claim as bargaining unit work.

(Dkt. No. 89-32, at 24; Dkt. No. 89-33, at 23). This provision provides a dispute resolution procedure for any work assignment dispute. (Dkt. No. 89-32, at 34; Dkt. No. 89-33).

Article V bolsters Plaintiffs' interpretation because it includes "[a]ll machines used in Demolition" as machinery and equipment claimed by Locals 17, 17A, 17B, and 17RA. (Dkt. No. 89-32, at 13; Dkt. No. 89-33, at 12). Even if, as Defendants urge, Article V "establishes equipment classifications for wage-setting purposes" and describes the "industry context where this classification system applies," (Dkt. No. 161, at 6), the CBAs' reference to machinery and equipment used in the demolition industry would be meaningless if the CBAs did not include demolition work at all. *See CP III Rincon Towers, Inc. v. Cohen*, 666 F. App'x 46, 51–52 (2d Cir. 2016) ("It is well-established that we disfavor readings of a contract that render provisions of an agreement superfluous. . . . [W]e do take the fact that a given interpretation would render a provision superfluous into account in evaluating whether the relevant provisions, read together, are ambiguous." (citing *Int'l Multifoods Crop. v. Com. Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002) and *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003))); *see also Columbus Park Corp. v. Dep't of Hous. Pres. & Dev.*, 598 N.E.2d 702, 708 (N.Y. 1992) ("[A] construction which makes a contract provision meaningless is contrary to basic principles of contract interpretation."). And the classifications do not further define demolition work.

However, Plaintiffs' reliance on the union recognition provision, which indicates that the CBAs apply to employees who use the equipment and machinery "in the classifications of work covered by this Agreement" and the employees in "the schedules attached" (Dkt. No. 89-32, at 10; Dkt. No. 89-33, at 10) must be read with the rest of the CBA to give the other provisions meaning. *See Royal Dispatch Servs. v. UBS Fin. Servs.*, No. 12-cv-2032, 2012 WL 3113291, at *4, 2012 U.S. Dist. LEXIS 107027, at *12 (E.D.N.Y. July 31, 2012) (The court "must consider the contract as a whole, give effect and meaning to every term, and attempt to harmonize all of the terms."); *Venture Grp. Enters. v. Vonage Bus. Inc.*, No. 20-cv-4095, 2024 WL 4502995, at *5, 2024 U.S. Dist. LEXIS 188381, at *16 (S.D.N.Y. Oct. 16, 2024) ("[C]ourts should not read language 'in isolation because the contract must be considered as a whole.'" (quoting *Brad H. v. City of New York*, 951 N.E.2d 743, 746 (N.Y. 2011))). The union recognition provision thus must be considered along with the clause relied upon by Defendants in Article 1, Purposes and Principles: the CBA applies to the "building construction site." (Dkt. No. 89-32, at 6; Dkt. No. 89-33, at 6).

Although Locals 17, 17A, 17B, and 17RA claim "machines used in Demolition" and "any Machine irrespective of power, when used in the Building and Construction Industry and normally operated by an Engineer," (Dkt. No. 89-32, at 13; Dkt. No. 89-33, at 12), it is not clear to the Court that the CBA unambiguously covers any use of that equipment, and the parties have not addressed the language in the Article 1 Purposes and Principles provision.

The Court may nevertheless resolve the summary judgment motion if "the extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law." *Shepley*, 174 F.3d at 72 n.5 (2d Cir. 1999). "The categories of extrinsic evidence that a court may consider in interpreting an ambiguous provision of a CBA include bargaining

history, past practices, industry practices, other provisions in the CBA, and legal context." *New England Health Care Emps. Welfare Fund*, 886 F. Supp. 2d at 103 (citing *Marcic*, 397 F.3d at 131–32; *see Roberts*, 911 F. Supp. 2d at 175 (considering the past practices of the parties to determine their intent regarding certain provisions of a collective bargaining agreement).

Defendants do not rely on extrinsic evidence.[11] Plaintiffs do, and it supports only one conclusion: that the CBAs cover the work Cambria performed. From the evidence on which Plaintiffs rely, the Court finds most telling Cambria's past practice of remitting contributions for employees who performed only demolition work and the practice of similarly situated employers.

Plaintiffs allege that over the course of seventeen years, from 2001 to 2017, Defendants remitted "reports, fringe benefit contributions, and deductions to Plaintiffs on behalf of their operating engineers who performed demolition, site work, and excavation work," (Dkt. No. 160-14, at 17), and have provided evidence indicating the same, (Dkt. No. 136-10, ¶¶ 4, 7–8; Dkt. No. 136-12; Dkt. No. 89-3; Dkt. No. 89-4; Dkt. Nos. 136-15–136-19; Dkt. Nos. 136-21–136-24).

Defendants object to evidence of their past practice. They argue that "past contributions were made in error and at Plaintiffs' direction during a period of jurisdictional confusion," and that Cambria's refusal to make contributions pursuant to the CBAs demonstrates "complete repudiation" of the CBAs. (Dkt. No. 161, at 13). But even if Defendants had been confused about Cambria's obligations under the Local 17 Building CBAs, Defendants' own witness

---

[11] Defendants' position is that "because the CBAs are unambiguous, extrinsic evidence is neither necessary nor appropriate." (Dkt. No. 161, at 16). However, Defendants also state that they "reserve the right to present such evidence if the Court finds ambiguity." (*Id.* at 17). Defendants, however, have had ample opportunity to submit evidence. Before the parties submitted any briefing on Plaintiffs' renewed summary judgment motion, the Court stated during the August 6, 2025 hearing that "the parties may submit exhibits if they need in the renewal motion if there need to be exhibits submitted." (Dkt. No. 149, at 47). Defendants did not provide any extrinsic evidence in the renewal round of summary judgment briefing, this case is now set for trial, and the Court will not consider any new submissions.

testified that this confusion stemmed from whether Cambria owed contributions for work performed outside the geographical jurisdiction of Local 17, not whether the work was covered. (*See* Dkt. No. 131-13, ¶¶ 7–8).

Defendants' "repudiation" argument is likewise inapposite. The provision in the case they rely on, *NLRB v. Haberman Const. Co.*, 641 F.2d 351, 356 (5th Cir. 1981), (Dkt. No. 161, at 13), discusses whether an employer's conduct showed that the employer manifested its intention to be bound by a labor agreement in the absence of a formal, written agreement between the parties. Here, there is no issue as to whether Defendants were bound to the Local 17 Building CBAs. The parties stipulated that Defendants were bound to them. (Dkt. No. 89-47 ¶ 1). And Defendants' witness concedes that Cambria was "still technically signed to" the Local 17 Building CBA after 2017. (Dkt. No. 131-13, ¶ 10). But regardless if Defendants intended to repudiate the CBAs or actually terminated it, their past practice of remitting contributions and deductions over a seventeen-year period is probative extrinsic evidence. Based upon this strong extrinsic evidence the Court finds that there are no genuine issues of material fact, and that the CBAs can be interpreted as a matter of law to cover the demolition work performed by Defendants. *See Faulkner v. Nat'l Geographic Soc.*, 452 F. Supp. 2d 369, 381–82 (S.D.N.Y. 2006) (granting summary judgment after finding that the parties' contract was ambiguous, but that their past practices supported only the movant's interpretation).[12]

---

[12] Plaintiffs have also provided evidence of industry practice to show that the Local 17 CBAs cover standalone demolition work. This evidence includes an affidavit from Plaintiffs' payroll auditor, Michael Tarby. He testified that his accounting firm previously audited other employers subject to the same Local 17 Building CBAs, and that they have remitted contributions and deductions to Plaintiffs for employees "operat[ing] heavy equipment to perform demolition work." (Dkt. No. 136-13, ¶ 3). Local 17's Business Manager, William Fekete, also provided an affidavit, in which he stated that "[c]ontractors apply Plaintiff Local 17'[s] . . . CBAs to demolition work and the employees operating the equipment used in demolition work," and that "[t]he demolition work does not need to be connected to the construction of a building." (Dkt. No. 136, ¶ 8). This evidence indicates that it is industry practice for standalone demolition work to be covered under the CBAs. *See Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 546 (7th Cir. 2000) (finding another employer's actions under the terms of an identical collective bargaining agreement evidence of industry practice).

#### 4.  Local 17C Residential CBA and Local 158 CBAs

Plaintiffs claim that Defendants owe contributions and deductions pursuant to the Local 17C Residential CBA and the Local 158 CBAs. (*See* Dkt. No. 160-14, at 3–5). Defendants do not present any argument on the applicability of these CBAs, (*see generally* Dkt. No. 161; Dkt. No. 163), and thus, have failed to raise any genuine issue of material fact regarding whether they require Defendants to pay contributions and deductions. As a result, the Court analyzes whether Plaintiffs have presented evidence sufficient to meet their summary judgment burden on this part of their cause of action.

Plaintiffs have sufficiently shown that they are entitled to contributions and deductions pursuant to the Local 17C Residential CBA and the Local 158 CBAs. Plaintiffs included each of the CBAs in the record, (*see* Dkt. No. 89-40; Dkt. No. 136-5; Dkt. No. 89-10), and they all require Cambria to remit contributions and deductions for work performed under the CBAs. (*See* Dkt. No. 89-40, at 17–19, 23–27; Dkt. No. 136-5, at 14–18; Dkt. No. 89-10, at 19–26). Plaintiffs' payroll auditor, Michael Tarby, reallocated hours for work performed by Cambria's employees to the Local 17C Residential CBA and the Local 158 CBAs.[13] (*See* Dkt. No. 136-13, ¶¶ 20–22; Dkt. No 160-14, at 3–5). Plaintiffs have provided his analysis. (*See* Dkt. No. 136-14–136-24). Therefore, they are entitled to summary judgment on the part of their claim for contributions and deductions pursuant to the Local 17C Residential CBA and the Local 158 CBAs.

### C.    Damages

The total award of damages cannot be determined yet because the Court denies part of Plaintiffs' motion for summary judgment.

---

[13] *See infra* Section IV.C. for a discussion of Tarby's reallocation.

The record reflects the following regarding monies owed to Plaintiffs. Plaintiffs' payroll auditor, Michael Tarby, conducted an audit in March 2023. (*See* Dkt. No. 89-2, ¶ 16; Dkt. No. 89-3). He concluded that Cambria owed Plaintiffs $201,138.20 in delinquent contributions and deductions. (*See* Dkt. No. 89-3; Dkt. No. 56, ¶ 33). Defendants hired Kenneth Pink, an accountant, to review Tarby's March 2023 audit. He issued a report in August 2023, correcting Tarby's $201,138.20 calculation to $169,331.64.[14] (Dkt. No. 131-23, at 10). After Tarby and Pink made their reports, the parties stipulated that Cambria's employees worked 5,676.75 hours from January 1, 2012 through September 30, 2021 in the geographic and territorial work jurisdictions of specified collective bargaining agreements. (Dkt. No. 89-47, ¶ 2). Based on the parties' stipulation, Tarby recalculated the total amount of contributions and deductions Cambria owed as $168,922.76. (Dkt. No. 89-2, ¶ 19). He included this analysis in his first affidavit in support of Plaintiffs' initial motion for summary judgment. (Dkt. No. 89-2). In response, Defendants submitted an affidavit from Pink (Dkt. No. 131-5). He stood by his original analysis that Cambria owed $169,331.64 in total contributions and deductions for the stipulated 5,676.75 hours. (*See id.* at ¶¶ 12–13). There was a difference of $408.88 between the auditors' calculations.

In 2025, Tarby reallocated the hours Defendants owed to different CBAs than in his first payroll audit. He testified in his second affidavit, (Dkt. No. 136-13), that he reallocated hours after Defendants' "object[ed] . . . to the allocation of 4,700 hours to Local 463 area under the Heavy Highway CBA" in their response to Plaintiffs' summary judgment motion. (*Id.* at ¶ 20).

---

[14] In addition, Pink found that Cambria overpaid contributions based on "hours out of the jurisdiction," (Dkt. No. 131-23, at 8) in the amount of $420,068. (*Id.* at 9). After subtracting that sum from his calculation of total contributions and deductions owed, $169,331, he found that Cambria overpaid Plaintiffs by $250,737. (*Id.*). The Court, however, is not considering the issue of whether Defendants are entitled to an offset or recoupment of contributions because the Court dismissed this affirmative defense. (*See* Dkt. No. 149, at 3; *see also* Dkt. No. 159).

Tarby explained that he "initially (in 2017) allocated those 4,700 hours to Local 463's area under the Heavy Highway CBA because Defendants had not produced any records showing the precise location of the work in New York and Defendants had chosen to report other hours to Plaintiffs as being worked in Local 463's area under the Heavy Highway CBA." (*Id.* at ¶ 19). Tarby then "reexamined Defendants' (subsequently produced) records and reallocated the 4,700 hours based on those records." (*Id.* at ¶ 20). He also "reallocated 498.75 (of the 544.25 hours) that remained in dispute." (*Id.*). Based on this reallocation, Tarby recalculated the total contributions and deductions owed as $165,038.90 (*Id.* at ¶ 23). Tarby's affidavit describes how he reallocated the hours and why that reallocation was warranted. (*Id.* at ¶¶ 16–23). Defendants did not provide another affidavit from Pink in their surreply or in their briefing in response to Plaintiffs' renewed summary judgment motion.

Defendants, in their surreply, (Dkt. No. 141-2), and in their briefing responding to Plaintiffs' renewed motion for summary judgment, (Dkt. No. 161; Dkt. No. 163), have failed to raise a genuine issue of material fact as to the reallocation. Although they make arguments challenging it, they failed to adduce any evidence in support of their arguments.[15] This is not enough to raise a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." (citation altered)); *N.Y. Dist. Council of Carpenters Pension Fund v. KW Const., Inc.*, No. 07-cv-8008, 2010 WL

---

[15] During the hearing on Plaintiffs' motion for summary judgment on August 6, 2025, the Court stated that "the parties may submit exhibits if they need in the renewal motion if there need to be exhibits submitted[.]" (Dkt. No. 149, at 47).

3958799, at *5, 2010 U.S. Dist. LEXIS 99643, at *19 (S.D.N.Y. Sep. 8, 2010) ("[T]o create a genuine dispute of material fact, an employer must do more than simply 'quibble' with the auditor's methodology . . . Instead, an employer must at least put forth 'affidavit and deposition testimony asserting facts that would cast doubt upon the accuracy of the Fund's calculations.'") (citation modified) (quoting *N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, No. 06-cv-6377, 2009 WL 362640, at *3–4, 2009 U.S. Dist. LEXIS 11477, at *9 (S.D.N.Y. Feb. 13, 2009) and *Ill. Conf. of Teamsters Emps. Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1367 (7th Cir. 1995))). Therefore, Tarby's reallocation of hours, except as to hours allocated to the 2015-2018 Local 463 Building CBA[16], is not at issue for trial.

The Court notes that there appears to be a genuine issue of material fact regarding whether contributions and deductions are owed for 544.25 hours. (*See* Dkt. No. 89-2, ¶ 26 ("Defendants do not agree that they owe the additional 544.25 hours."); Dkt. No. 89-51, at 17)). This is an issue that was identified by Plaintiffs. Defendants have not addressed this issue in their briefing; the parties are directed to address this in the pretrial submissions.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to strike the Affidavit of Kenneth L. Wagner (Dkt. No. 164) is **DENIED** as moot; and it is further

**ORDERED** that Plaintiffs' motion to strike Defendants' covered work argument (Dkt. No. 160) is **DENIED;** and it is further

---

[16] Defendants may challenge Tarby's reallocation of hours to the 2015-2018 Local 463 Building CBA because the Court finds that whether Defendants were bound to that CBA is an issue for trial. *See supra* Section IV.B.2.

**ORDERED** that Plaintiffs' renewed motion for summary judgment (Dkt. No. 160) is **DENIED** in part and **GRANTED** in part[17]; and it is further

**ORDERED** that the parties meet and confer by January 9, 2026 to determine whether they can reach agreement on any of the remaining factual issues identified in this decision. Pre-trial submissions required by the Court's Trial Order (Dkt. No. 127) are due by January 16, 2026, with responses due by January 23, 2026. The parties must, in their trial memoranda describe: (1) their positions with respect to the remaining factual issues, (2) what issues remain for the jury, (3) what evidence they seek to present at trial; and (4) what issues remain for the Court. In addition, Defendants must, in their trial memorandum, address where the 252 hours worked by employee Hickey as an operating engineer in 2016 were worked and to which CBA they should be allocated. Responses to the trial memorandum submitted by each party are due by January 23, 2026; and it is further

**ORDERED** that a final pretrial conference is scheduled for January 30, 2026 at noon, and trial remains scheduled for February 9, 2025.

**IT IS SO ORDERED.**

Dated: <u>December 23, 2025</u>
      Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

---

[17] This decision does not preclude Plaintiffs from pursuing claims under the Second Cause of Action arising out of the audit for the period beginning on October 21, 2021. (*See* Dkt. No. 56 at 12–14, 23–24.)